```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                         EASTERN DIVISION
```

RITCHIE BROS. AUCTIONEEERS          )
(AMERICA), INC.,                    )
a Washington Corporation,           )
                                    )
                Plaintiff,          )
                                    )
        v.                          )   No. 4:08 CV 1432 DDN
                                    )
JERRY WHITE, d/b/a JERRY WHITE      )
CONSTRUCTION & EQUIPMENT            )
COMPANY,                            )
                                    )
                Defendant.          )

## **MEMORANDUM AND ORDER**

This action is before the Court upon the motions of defendant Jerry White, d/b/a Jerry White Construction & Equipment Company (Jerry White), to enforce the settlement (Doc. 8) and for the return of property (Doc. 21). The parties have also jointly moved for entry of a protective order (Doc. 27). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c). (Doc. 18.) The court held a hearing on this matter on May 26, 2009.

## **I. BACKGROUND**

On September 19, 2008, plaintiff Ritchie Bros. Auctioneers (Ritchie Bros.) brought this action for breach of contract and declaratory judgment against Jerry White. (Doc. 1.) According to the complaint, Ritchie Bros. and Jerry White entered into an agreement, in which White agreed to sell heavy equipment at one of the plaintiff's auctions. (Id. at ¶ 6.) Among its provisions, the auction agreement stated that the auction would not have a reserve (i.e., a minimum bid), and that neither the owner, nor anyone working on behalf of the owner, would bid on the owner's equipment. (Id. at ¶¶ 7-9; Doc. 1, Ex. 2 at ¶ 1(d).) If an owner were to bid on his own equipment, the contract provided that the equipment would be deemed unsold, Ritchie Bros. could re-auction the

items, and that Ritchie Bros.' commission on re-sale would be 20% of the bid price. (Doc. 1, Ex. 2 at ¶¶ 1(d),(k).)

According to the complaint, Ritchie Bros. held an auction in Saint Louis, Missouri, on April 1, 2008. (Doc. 1 at ¶ 11.) At the auction, a company called Tri-State Construction allegedly purchased seven pieces of the defendant's equipment, totaling $277,500. (Id. at ¶ 12.) In Count I of its complaint, Ritchie Bros. alleges that Tri-State Construction never took possession of the purchased equipment. (Id. at ¶ 14.) Instead, Ritchie Bros. asserts that Jerry White picked up the equipment, returned it to his company's equipment yard, and reimbursed Tri-State Construction for the purchase price. (Id.) By "buying-back" the equipment, Ritchie Bros. alleges Jerry White breached the auction agreement. (Id. at ¶ 15; Doc. 8, Ex. G.) As a remedy for the breach, Ritchie Bros. seeks to re-sell the purchased equipment, and to recover its commission and other damages from the defendant. (Doc. 1 at ¶¶ 10, 16-18, 23-25; Doc. 8, Ex. G.)

After the auction, Darren Watt, in-house counsel and Manager of Legal Affairs at Ritchie Bros., sent Jerry White a letter, listing the seven pieces of heavy equipment Ritchie Bros. believed had been bought back. (Doc. 8, Ex. G.) The letter demanded the return of the items for resale by "legitimate, open action," and threatened Jerry White and Tri-State Construction with legal action if these demands were not met. (Id.) Watt sent the letter on June 23, 2008, on Ritchie Bros. letterhead. (Id.) The letter was signed by Watt, but on behalf of Ritchie Bros. Auctioneers (America) Inc. (Id.)

In response to the letter, Jerry White's lawyer, Michal Doerge, began negotiating with Watt, in an effort to resolve the dispute. (Doc. 1 at ¶ 28; Doc. 8 at ¶ 3.) As part of these negotiations, Doerge sent Watt a settlement and sales agreement to sign on August 18, 2008. (Doc. 1 at ¶ 29; Doc. 8, Ex. A.) A few hours after receiving the proposed agreement, Watt responded that the draft agreement looked fine, subject to one attached comment, and that if Doerge was "happy with my suggested change, I will await receipt of a final version for execution. . . ." (Doc. 8, Ex. B at 1.) Watt's comment noted that White had the right to return the equipment to Ritchie Bros., provided the

equipment was returned by September 12, 2008. (Id. at 3.) Watt's response was sent from his Ritchie Bros.' e-mail account, dwatt@rbauction.com, and included the electronic signature "Darren Watt, Counsel & Manager Legal Affairs, Ritchie Bros. Auctioneers." (Id. at 1.)

On August 22, 2008, Watt e-mailed Doerge, asking "when we might expect to see an execution version of our settlement agreement?" (Doc. 8, Ex. D.) This e-mail was sent from Watt's Ritchie Bros.' account, and bore the same electronic signature as before. (Id.) On September 2, 2008, Doerge mailed Watt a signed copy of the agreement, with Watt's additional comment incorporated into the contract. (Doc. 8, Ex. E at 1-2.) Shortly after receiving the agreement, Gary Caufield, the Director of Legal Affairs for Ritchie Bros., called Doerge, to inform him that Watt lacked the authority to bind Ritchie Bros. to such an agreement, and that Ritchie Bros. was rejecting the agreement. (Doc. 13, Ex. B at ¶¶ 4-7.)

In Count II of its complaint, Ritchie Bros. alleges that Watt lacked the authority to finalize such an agreement on its behalf, and that complying with certain provisions of the settlement agreement would be illegal, requiring the company to participate in a fraud. (Doc. 1 at ¶¶ 30, 34, 39.) As a result, Ritchie Bros. seeks a declaratory judgment, stating that the settlement agreement is either 1) not binding; or 2) unenforceable and void because it cannot be performed, or because it is illegal and against public policy. (Id. at 8.)

In a counterclaim, Jerry White brings a claim for replevin. (Doc. 7.) He alleges that Ritchie Bros. possesses five of the seven pieces of heavy equipment that were sold at the auction. (Id. at ¶ 5.) White alleges that Ritchie Bros. has no right to the property, and that he is the lawful owner of the property. (Id. at ¶ 9.) Ritchie Bros. admits that it currently has these five pieces of heavy equipment at its Saint Louis auction yard. (Doc. 11 at ¶ 5.)

## II. MOTION TO ENFORCE THE SETTLEMENT

Jerry White moves to enforce the settlement agreement and to dismiss the plaintiff's complaint. He argues that there was a meeting of the minds: the agreement represented a valid offer by Ritchie Bros., and his

signature was acceptance of that offer. He argues that Darren Watt held himself out as having the authority to bind Ritchie Bros. to a contract, either through actual or apparent authority. In reliance on the agreement, Jerry White notes that he returned some of the heavy equipment. Under the doctrine of promissory estoppel, he argues that this partial performance should be used to enforce the settlement agreement. (Doc. 8.)

In response, Ritchie Bros. argues that Watt lacked either actual or apparent authority to bind the company to the settlement. Under Illinois law, opposing counsel must demand proof of an attorney's authority to enter into a settlement on behalf of a client. Ritchie Bros. also argues that the settlement is unenforceable, because complying with certain provisions of the agreement would require the company to participate in a fraud. (Doc. 13.)

Both parties believe that Illinois law governs the existence or interpretation of the settlement agreement. (Doc. 8 at 3; Doc. 13 at 4 n.2.)

### III. DISCUSSION

A federal district court sitting in diversity jurisdiction must apply the rules of decision that would be applied by the courts of the state in which it sits, including the initial choice of the applicable substantive law. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

For claims concerning breach of contract, Missouri choice of law rules follow the "most significant relationship" test, found in Section 188 of the Restatement (Second) of Conflicts of Laws. Gateway W. Ry. Co. v. Morrison Metalweld Process Corp., 46 F.3d 860, 863 (8th Cir. 1995). Under this test, the court balances several factors to determine which state has the most significant relationship to the action. Dillard v. Shaughnessy, Fickel and Scott Architects, Inc., 943 S.W.2d 711, 715 (Mo. Ct. App. 1997). These factors include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of

business of the parties.  Id.  The court should not consider each factor mechanically, but instead, evaluate each factor based on its "relative importance to the particular issue before the court."  Id.

In this case, Michael Doerge negotiated the settlement agreement from his Illinois office, while Darren Watt negotiated from his Nebraska office.  (Doc. 8, Ex. E at 1.)  Under the terms of the agreement, both Doerge and Watt contemplated that Illinois law would "control the interpretation and enforcement of this Agreement."  (Id. at ¶ 13.)  Under the agreement, Jerry White had the right to return the equipment (located in Illinois) to any one of Ritchie Bros.' auction yards.  (Id. at ¶ 4.)  Ultimately, he returned the equipment to the auction yard in Missouri.  (Doc. 11 at ¶ 5.)  Jerry White is an Illinois resident, with his principal place of business in Illinois, while Ritchie Bros. is a Washington corporation, with its principal place of business in Nebraska.  (Doc. 1 at ¶¶ 2-3.)  Under the circumstances, the court finds that Illinois has the most significant relationship to the action.

**Authority to Settle**

Jerry White argues that Darren Watt held himself out as having the authority, either actual or apparent, to bind Ritchie Bros. to a settlement contract.

Settlement agreements are to be encouraged and given full force. Kazale v. Flowers, 541 N.E.2d 219, 221 (Ill. App. Ct. 1989).  Indeed, the encouragement of voluntary settlements is considered an important federal policy.  See Higbee v. Sentry Ins. Co., 253 F.3d 994, 995 (7th Cir. 2001).  At the same time, judges must resist the temptation to dismiss a case where the settlement is not yet final, or where there was no authority for the lawyer to settle the case.  See Magallanes v. Ill. Bell Tel. Co., 535 F.3d 582, 584 (7th Cir. 2008); id.

Under Illinois law, an attorney has no authority to compromise or settle a client's claim, unless the client has expressly authorized the attorney to do so.  Magallanes, 535 F.3d at 584; Brewer v. Nat'l R.R. Passenger Corp., 649 N.E.2d 1331, 1334 (Ill. 1995).  Absent such express authority, any out-of-court settlement will not be binding on the client. Brewer, 649 N.E.2d at 1334.  "Apparent authority cannot be sufficient."

Adams v. Towers, Perrin, Forster & Crosby, Inc., 793 F. Supp. 165, 169 (N.D. Ill. 1992). If opposing counsel fails to inquire or demand proof of his counterpart's authority, his dealings with opposing counsel are at his own peril. Brewer, 649 N.E.2d at 1334. The party alleging that express authority existed bears the burden of proof on the issue. Magallanes, 535 F.3d at 584; Id.

These settled principles make no distinction between in-house counsel and a privately retained lawyer. Adams, 793 F. Supp. at 169. "[C]orporations with in-house counsel are no less entitled to [the protections of Brewer] than corporations with outside counsel." Id. These principles also apply without regard to the timing of the complaint. Id. "Clients who hire an attorney to handle a particular matter need just as much protection from unauthorized settlements before a lawsuit is filed as they would after a lawsuit is filed." Id.

Looking to Adams, Brewer, and Magallanes, Jerry White has not met his burden of proving Ritchie Bros. provided Darren Watt with the express authority to reach a settlement. White has not produced any supporting affidavits on the question of Watt's authority. In contrast, Gary Caufield's affidavit states that Watt had "no authority to enter into a settlement or agreement with respect to a dispute without my approval or outside of company policy." (Doc. 13, Ex. B at ¶ 4); see also Kazale, 541 N.E.2d at 223 (refusing to enforce a settlement where the plaintiff's affidavit stated "she at no time gave her attorney authority to conclude a settlement of her claim."). More to the point, Caufield immediately called Doerge to disavow the settlement when he became aware of it. (Doc. 13, Ex. B at ¶ 7.) Under the circumstances, Jerry White has failed to prove Darren Watt had the express authority to bind Ritchie Bros. to the settlement agreement. The motion to enforce the settlement is denied without prejudice.[1]

---

[1]Because the parties have not engaged in discovery, Jerry White has not had the opportunity to depose Darren Watt. If Watt's testimony, or any other evidence, indicates that Ritchie Bros. granted him express authority to negotiate a settlement, Jerry White may renew his motion. See generally Fid. Mut. Life Ins. Co. v. Am. Nat'l Bank and Trust Co., No. 93 C 2851, 1994 WL 14635, at *3 (N.D. Ill. Jan. 20, 1994) (finding counsel's testimony showed the client had granted its attorney the
(continued...)

**Meeting of the Minds**

Jerry White argues that there was a meeting of the minds. Because there is no evidence Ritchie Bros. gave Watt the express authority to reach a settlement, the court need not address this issue. Magallanes, 535 F.3d at 585 n.2; Adams, 793 F. Supp. at 170.

**Promissory Estoppel**

Jerry White argues that his partial performance should be used to enforce the agreement under the doctrine of promissory estoppel. Relying on the settlement agreement, he argues that he returned some of the heavy equipment to Ritchie Bros., to his detriment.

Promissory estoppel is an equitable remedy, intended to prevent a party from being injured by a change in position, made in reasonable reliance on another's conduct. Ross v. May Co., 880 N.E.2d 210, 217 (Ill. App. Ct. 2007). To state a claim for promissory estoppel Jerry White must prove (1) Ritchie Bros. made an unambiguous promise; (2) he relied on that promise; (3) his reliance was expected and foreseeable by Ritchie Bros.; and (4) he relied on the promise to his detriment. Quake Constr., Inc. v. Am. Airlines, Inc., 565 N.E.2d 990, 1004 (Ill. 1990). Under Illinois law, White's reliance must be reasonable and justifiable. Id.

The law guarding against unauthorized settlements is a "longstanding rule in Illinois," dating as far back as 1897. Adams, 793 F. Supp. at 168-69 (quoting McClintock v. Helberg, 48 N.E. 145, 147-48 (Ill. 1897)). Given this well-settled principle, along with the absence of any facts on this record to support Watt's authority to bind Ritchie Bros., Jerry White has failed to show his reliance on the settlement agreement was either reasonable or justified. See Krieg v. Ameritech Int'l, Inc., No. 96 C 4751, 1998 WL 161010, at *5 (N.D. Ill. Mar. 31, 1998) (finding plaintiff could not prevail on a promissory estoppel theory because he had no reasonable basis for believing two company representatives had the authority to bind the defendant company).

---

[1](...continued)
express authority to settle the case).

In addition, Jerry White cannot currently prove that his reliance on the settlement was to his detriment. Relying on the agreement, White returned some of the heavy equipment to Ritchie Bros. Yet, in its complaint, Ritchie Bros. alleges that Jerry White breached the auction agreement by buying-back seven pieces of heavy equipment. According to the complaint, White had no legal claim to the equipment, and his refusal to return the equipment to Ritchie Bros. was a breach of the auction agreement. Under the auction agreement, Ritchie Bros. claims the right to re-sell any equipment that was bought-back by the seller. Whether White suffered any legal detriment by returning the equipment goes to the merits of the plaintiff's case.

## IV. MOTION FOR RETURN OF PROPERTY

Jerry White has moved for the return of property, through replevin. He argues that he lawfully owns the equipment at issue, and that Ritchie Bros. has no legal right to possess or control the equipment. (Doc. 21.)

In response, Ritchie Bros. argues that Jerry White has not complied with any of the procedural requirements for replevin. In addition, Ritchie Bros. argues that it has a valid lien on the equipment, and that White has no legal right to the equipment, having breached the auction agreement. (Doc. 24.)

## V. DISCUSSION

In any federal court proceeding, every remedy for seizing a person or property is available to the parties that is already available "under the law of the state where the court is located. . . ." Fed. R. Civ. P. 64(a). This rule specifically includes a replevin action. Fed. R. Civ. P. 64(b).

Replevin is a possessory action, which tests the moving party's right to immediate possession of a chattel, while challenging the opposing party's wrongful detention. <u>First Tenn. Bank Nat'l Ass'n v. Graphic Arts Ctr., Inc.</u>, 859 S.W.2d 858, 863 (Mo. Ct. App. 1993); Mo. Sup. Ct. R. 99.01. In a replevin action, the moving party must file an affidavit with the court. Mo. Sup. Ct. R. 99.03. This affidavit must (a) include a description of the property; (b) describe the facts showing

the party is entitled to possession of the property; (c) list the actual value of the property; (d) state that the property has not been seized by any legal process; and (e) state that the moving party risks losing the property unless it immediately obtains the property, or unless the property is secured. Mo. Sup. Ct. R. 99.03(a)-(e). Beyond this affidavit, the moving party must also deliver a bond to the court, which is equal to twice the value of the property at issue. Mo. Sup. Ct. R. 99.06.

In this case, Jerry White has failed to comply with either the affidavit or bond requirement of Missouri Supreme Court Rule 99. The motion for return of property is denied without prejudice.

## VI. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendant Jerry White to enforce the settlement (Doc. 8) is denied without prejudice.

**IT IS FURTHER ORDERED** that the motion of defendant Jerry White for oral argument on the motion to enforce the settlement (Doc. 14) is denied as moot. The court held a hearing on this matter on May 26, 2009.

**IT IS FURTHER ORDERED** that the motion of defendant Jerry White for the return of property (Doc. 21) is denied without prejudice.

**IT IS FURTHER ORDERED** that the joint motion for entry of a protective order (Doc. 27) is sustained. The Agreed Protective Order is filed herewith.

/S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 24, 2009.